UNITED STATES of America,
Plaintiff–Appellee,

v.

William James CUTHEL, Dade Frank Sokoloff, Wilbur Harwood Hoover, Jay William Marden, Defendants–Appellants.

No. 88–5625.

United States Court of Appeals,
Eleventh Circuit.

June 22, 1990.

Steven E. Kreisberg, Coconut Grove, Fla., for Cuthel.

Joel Kaplan, Miami, Fla., for Sokoloff.

Jay R. Moskowitz, Sands & Moskowitz, Coconut Grove, Fla., for Marden.

Lawrence Besser, Miami, Fla., for Hoover.

Myles H. Malman, Carol Herman, Linda C. Hertz, Sonia E. O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and YOUNG *, Senior District Judge.

EDMONDSON, Circuit Judge:

Appellants Sokoloff, Hoover, Marden and Cuthel appeal their convictions for violations of the federal narcotics laws. Appellants claim reversible error from (1) the failure of the district judge to conduct a post-verdict investigation of alleged jury misconduct; (2) alleged prosecutorial misconduct regarding a potentially exculpatory witness's invocation of the fifth amendment; (3) allegedly prejudicial opening remarks of the prosecutor; and (4) allegedly improper wording of the jury instruction on the elements of conspiracy. We find no merit to these claims and affirm the convictions.[1] We discuss two of the contentions in some detail.

1.

Several days after the jury returned a verdict, Marden moved the trial court to interview the jurors. The motion was prompted by an anonymous telephone call allegedly received by Marden the day after the verdict was rendered. A woman, possibly a juror, reportedly stated that "we were pressured into making our decision" and that she wanted to let Marden know that she was sorry. Marden later supplemented this motion with evidence of a letter sent to the prosecutor after the trial by an alternate juror; in this letter the alternate juror expressed her views of the trial, the lawyers and the defendants (*See* Ap-

pendix). Marden, joined by the other appellants, contended that the letter indicated that the jurors considered the merits of the case before they were instructed to begin deliberations.

The government opposed Marden's motion, citing the "good cause" requirement for interviewing jurors under Local Rule 16 E of the Southern District of Florida[2] and Fed.R.Evid. 606(b), which prohibits post-verdict inquiry into juror deliberations. Following a hearing, the district court denied Marden's motion, reasoning that the letter and anonymous phone call "provided no colorable showing that any external influence had affected the jury's verdict," that Rule 606(b) precluded "any inquiry for the purpose of uncovering the internal deliberative process," and that Marden's motion failed to demonstrate good cause under the Local Rule. *United States v. Sokoloff*, 696 F.Supp. 1451, 1458 (S.D.Fla.1988).

The district court has discretion to determine whether evidence of premature deliberation warrants an evidentiary hearing. *See United States v. Chiantese*, 582 F.2d 974, 978–80 (5th Cir.1978); *accord United States v. Yonn*, 702 F.2d 1341, 1345 (11th Cir.1983) (discretion extends to initial decision whether to interrogate jurors); *United States v. Edwards*, 696 F.2d 1277, 1282 (11th Cir.1983) (decision within "sound discretion of trial judge especially when the alleged prejudice results from statements made by jurors themselves, and not from media publicity or other outside influences"); *Grooms v. Wainwright*, 610 F.2d 344, 347 (5th Cir.1980) (same). We therefore review the trial court's decision not to hold an evidentiary hearing for abuse of discretion. *Chiantese*, 582 F.2d at 978.

No per se rule requires the trial court to investigate the internal workings

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

1. We conclude that the remarks in the prosecutor's opening statement were not unduly prejudicial or inflammatory. About the jury instruction, we conclude that the subject of the requested charge was substantially covered by other instructions delivered.

2. Local Rule 16 E of the Southern District of Florida provides for jury polling "after the jury has been discharged, upon application in writing and for good cause shown, ... to determine whether the verdict is subject to legal challenge."

of the jury whenever a defendant asserts juror misconduct. *United States v. Barshov*, 733 F.2d 842, 851 (11th Cir.1984). "The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." *Id.* (citation omitted). To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show " 'clear, strong, substantial and incontrovertible evidence ... that a specific, nonspeculative impropriety has occurred.' " *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir.1989) (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir.1983)). "The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate." *United States v. Caldwell*, 776 F.2d 989, 998 (11th Cir.1985). We agree with the district court that the letter and the alleged phone call failed to show that the integrity of the trial process was impugned. There was no abuse of discretion.[3] *See Barshov*, 733 F.2d at 852.

■ Largely for reasons of finality in litigation, the district court may not question the jurors after the verdict is rendered, thereby impeaching the verdict. *See Tanner v. United States*, 483 U.S. 107, 120–21, 107 S.Ct. 2739, 2747–48, 97 L.Ed.2d 90 (1987). This is so even where the inquiry concerns misconduct prior to the deliberations. *Id.* There are two exceptions: jurors may testify to extraneous information brought to their attention and to outside influences brought to bear upon a juror. Fed.R.Evid. 606(b); *United States v. Badolato*, 710 F.2d 1509, 1515 (11th Cir.1983). But here there was no allegation of extraneous prejudicial information being brought to the jury's attention; nor was there evidence of improper outside influence sufficient to warrant an inquiry. The anonymous allegation that "we [the jurors] were pressured into making our decision" can suggest the normal dynamic of jury deliberations, with the intense pressure often required to reach a unanimous decision.

■ Even assuming that Rule 606(b)'s shield does not apply to alternate jurors, the decision of the trial judge not to question the alternate juror was no abuse of discretion on these facts. We reject appellant's characterization of the alternate juror as an outsider who influenced the jury: it is impossible for the alternate to have been an "outsider" until the deliberations started; and, after deliberations did start, the alternate was separated from the rest of the jury.

The letter fails to state that the jury deliberated prematurely. At most, the letter suggests that the alternate juror reached personal conclusions prior to the close of trial. Any pre-verdict discussions reflected in the letter were on counsel's style and not on the merits. Moreover, the letter was written two days after the verdict was rendered and might discuss remarks made in a post-verdict meeting, or in telephone conversations, of jurors and alternates.

Furthermore, the district court's finding, especially in the light of the jury's split verdicts (defendants were acquitted on some counts and convicted of others), of ample evidence that the jury reached a reasoned conclusion free of undue influence and did not decide the case before the close of evidence was not clearly erroneous.

### 2.

Randy Fink was the leader of a drug-smuggling organization. Following his arrest, Fink cooperated fully by giving testimony implicating other defendants. Later, Fink changed his story by making statements that tended to exculpate both Sokoloff and Hoover.

At trial, defendants called Fink as a defense witness. Upon advice of counsel, Fink asserted his fifth amendment right against self-incrimination to almost every

---

**3.** *United States v. Heller*, 785 F.2d 1524 (11th Cir.1986), is distinguishable on its facts and, therefore, does not control this case. Not only did *Heller* involve racial and religious slurs not at issue here, but, more important, that case involved a challenge to the jury's integrity made *before* the jury returned a verdict.

question put to him. The district court then rejected a proffer of Fink's out-of-court exculpatory statements as admissions against penal interest under Fed.R.Evid. 804(b)(3) on the ground that the statements were not sufficiently trustworthy in the light of Fink's pattern of materially inconsistent statements.

■ Considering Fink's contradictory prior statements given to federal agents, the trial court found that Fink had a realistic fear of potential perjury charges, which provided a sufficient basis for invoking the fifth amendment. *See United States v. Fortin,* 685 F.2d 1297, 1298 (11th Cir.1982) (testimony could have been used "in aid of" potential perjury charges); 18 U.S.C. § 1001 (witness may be prosecuted for giving false information to federal agent). A witness may properly invoke the privilege when he "reasonably apprehends a risk of self-incrimination, ... though no criminal charges are pending against him ... and even if the risk of prosecution is remote." *In re Corrugated Container Anti-Trust Litigation,* 620 F.2d 1086, 1091 (5th Cir.1980). While there is arguably a conflict between a witness's fifth amendment privilege and a defendant's sixth amendment right to compulsory process, such conflict long ago was resolved in favor of the witness's right to silence. *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931).

■ Defendants would have had the trial court compel Fink's testimony with a grant of use immunity, but "[d]istrict courts may not grant immunity to a defense witness merely because that witness possesses essential exculpatory information unavailable from other sources." *United States v. Gottesman,* 724 F.2d 1517, 1524 (11th Cir.1984). Furthermore, the exculpatory information in Fink's testimony was arguably available from other sources, namely the two defendants who could have testified. We find no error in the handling of Fink's refusal to testify.

AFFIRMED.

## APPENDIX

April 11, 1988
[Name and Address deleted]
Mr. Myles Malman
c/o U.S. Attorney's Office
155 S. Miami Ave
Miami, Fl
Dear Mr. Malman,

Congradulations [sic] on winning most of the cases against the Fink Organization. It was an interesting trial for us, the Jury. We made a few observations & had a few questions about the trial. I wanted to share them with you.

First of all, we saw through most of the Defense attorneys & how they tried to pull our attention away from the facts by putting up smoke-screens or attacking you personally. That was very regrettable. We were impressed with the professionalism in which you conducted yourself & the trial. The phrase everyone kept repeating was that you were *"Sharp as a tack"*. Your presentation of the facts, in my opinion, got you your convictions. The facts alone were not sufficient but with the way in which you laid them out before us, gave us a better understanding of the case. I just can't impress upon you *how* impressed we were with your presentation of the case. Not one juror said otherwise. We were all in agreement on this.

Second, I wondered why Soccaloff [sic] had only 2 counts against him? In my opionion [sic] he should have had the book thrown at him. I felt that he was the guiltyest [sic] of all. Of course, I wasn't in on the deliberations so my knowledge is lacking. I think if he had had all 4 counts against him he would have been found guilty on all 4.

Third, we were wondering what became of Claudia Rodriguez?

Fourth, & this doesn't pertain to the trial at all but I wanted to let you know that we, the jury, was [sic] also impressed by the suits & ties you wore & those Argyle socks too.

When things became dull or we were trying to keep from falling asleep after sitting for so long, we noticed things like

that. It all started off that first day by us remarking in a laughing manner about how bright yellow it was. As the days went by & you continued to wear sharp suits & bright ties, we starting [sic] remarking about it. There was only one negative remark & it was that you should use wooden hangers to hang your slacks over so as to prevent the crease across your knee.

Once again, congradulations [sic] to you & Mr. Bentley too.

Sincerely—Juror # 13

[Name deleted]