**UNITED STATES of America, Plaintiff,**

v.

**Simon ABCASIS, a/k/a "Hacham,"
Ralph Abcasis and Rebecca
Abcasis, Defendants.**

**No. 91–CR–379(S) (DRH).**

United States District Court,
E.D. New York.

Dec. 18, 1992.

See also 785 F.Supp. 1113.

Andrew Maloney, U.S. Atty., E.D.N.Y. by Eric Friedberg, Linda Lakhdhir, Asst. U.S. Attys., Brooklyn, NY, for plaintiff.

David Schoen, Montgomery, AL, David Breitbart, New York City, for defendant Ralph Abcasis.

Martin Goldberg, Franklin Square, NY, for defendant Rebecca Abcasis.

DePetris & Meyer by David DePetris, New York City, for defendant Simon Abcasis.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Following a jury trial, defendants in the above-captioned prosecution were convicted of various narcotics-related offenses. Currently before the Court is defendants' request for post-trial relief based on alleged juror misconduct. More specifically, defendants apparently seek the names and addresses or telephone numbers of the jurors in order to conduct post-trial interviews, an evidentiary hearing on the issue of the misconduct, and a new trial.[1] They make these requests based on allegations that a juror who served on the case commented on the evidence throughout the trial, gestured during the trial in a way that indicated she was biased against defendants, and made anti-Semitic comments with respect to defendants. They further allege that the jurors conducted pre-deliberations "polls" on the defendants' guilt or innocence. The Court denies each of defendants' requests for the reasons stated below.

## BACKGROUND

During the trial, counsel for defendants informed the Court that they perceived that Juror No. 4 was commenting on the evidence as it was being received and that they believed they had heard her discuss-

---

1. Contrary to Local Criminal Rule 3, defendants failed to file a notice of motion. Therefore, the Court has had to glean their requests for relief from their various submissions to the Court on this issue.

ing the evidence with another juror in the hall of the courthouse. Although the Court responded that it had "not noted anything inappropriate about the jury" (Tr. 1306), it agreed, pursuant to Mr. Breitbart's request, to interview Juror No. 4 out of the presence of the other jurors.

The following day, the Court called Juror No. 4 into the courtroom and instructed her not to discuss the case with her co-jurors. The Court also asked her whether she had done so, to which she replied, "Not that I know of", and then "No. Not other than, you know, I asked [the courtroom deputy] a question, but other than that...." When the Court asked her what she had asked the courtroom deputy, she responded that she had asked whether the defendants were permitted to communicate with their family while in the courtroom. The Court explained that while no one should speak if it would disrupt the proceedings, the defendants do have a right to confer. Tr. 1348. The Court then asked her again whether she had discussed the evidence or the parties with other jurors, and she answered "No."

Finally, the Court asked Juror No. 4 whether there was anything that would prevent her from keeping an open mind with respect to the case, and from basing her decision on the evidence at trial and the Court's legal instructions, and she answered in the negative. Tr. 1349. Following this colloquy, the Court asked counsel at sidebar whether there were any objections to what was said or anything counsel wanted the Court to add, to which both the government and the defense answered "No." Tr. 1349–50.

After the above-incident, defense counsel again complained of what they perceived to be misconduct on the part of Juror No. 4, including that she was "making gestures" and not observing evidence (Tr. 2259), all of which indicated to defense counsel that she had already made up her mind that defendants were guilty. Defense counsel also noted that Juror No. 4 spoke to other jurors "about the whispering that goes on at defense table." Tr. 2260. Based on these

observations, defense counsel asked that she be removed from the jury.

With respect to the allegation that Juror No. 4 commented on the fact that defendants and defense counsel conferred, the Court stated, in substance, that her reaction "doesn't impinge on her role as a juror" and "would not serve as a basis to eliminate her from the jury." Tr. 2265–66. Moreover, the Court stated that it would be amenable to speaking to all the jurors as a group if the defense thought it was appropriate, and if so, would instruct the jurors in the same way the Court had with Juror No. 4, and also mention that the defendants have a right to confer with counsel and each other during the proceedings.

In response to the Court's suggestion, Mr. Breitbart asked the Court to pay close attention to Juror No. 4. Tr. 2268. However, he did not request a hearing, and Mr. Schoen explicitly stated that the other jurors should not be voir dired. Tr. 2269, 2260. The Court then reiterated that it had not observed any irregular behavior, but that it would be willing to "entertain any application at any time." Tr. 2269.

That afternoon, Mr. Schoen claimed that he had been observing Juror No. 4 and had caught her "in the act" of making "mocking" gestures. Tr. 2348. The Court stated that it had been watching Juror No. 4 "almost the entire time" since the last conference, and that it "d[idn't] think there's a problem with this juror". Tr. 2350. Mr. Breitbart suggested dismissing the juror (Tr. 2351), but the Court, although it expressed a willingness to voir dire the juror again and/or give further instructions, held that "there is not, from what I heard, a proper predicate to remove this woman.... I've not observed inappropriate behavior." Tr. 2351. The Court asked the defense to reflect on suggestions for an appropriate course of action, but the defense never addressed the issue to the Court again.

At the close of the testimony on July 23, the Court instructed the jury at length that they should not discuss the case, the evidence, the witnesses, "or anything that transpires" (Tr. 2424) and that "[i]f anyone speaks to you, either any of the jurors or

anybody else, anybody outside of the courtroom, concerning the evidence, you are duty-bound to report it to the courtroom deputy who will report it to the Court." Tr. 2425.

On Friday, August 7, 1992, the case was submitted to the jury and the alternates were discharged. Messrs. Breitbart and DePetris interviewed Alternate No. 2, who apparently informed them of the following:

—Juror No. 4 constantly discussed defendants, defendants' counsel and the evidence with the other jurors throughout the case. Breitbart Aff. ¶ 10; DePetris Aff. ¶ 10.

—Pre-deliberations polls were regularly taken by all jurors as to the defendants' guilt or innocence. Breitbart Aff. ¶ 10; DePetris Aff. ¶ 10.

—Juror No. 4 was extremely disruptive, repeatedly engaged in inappropriate conduct, and caused problems for other jurors. Breitbart Aff. ¶ 10; DePetris Aff. ¶ 10.

This information was first brought to the Court's attention in papers relating to the instant motion.

On August 13, 1992, the jury, consisting of eleven members on consent of counsel, rendered a verdict of guilty on Counts One, Two, Three and Seven and a verdict of not guilty on Counts Five and Six.

In connection with this motion, defense counsel submitted attorney affidavits indicating that after the verdict, Juror No. 2 informed them of the following instances of misconduct:

—Juror No. 4 came to hate both Mr. Schoen and Mr. Breitbart. Schoen Aff. ¶ 14; Breitbart Aff. ¶ 11.

—Juror No. 4 had made up her mind at the outset of the trial that defendants were guilty. Schoen Aff. ¶ 4.

—Juror No. 4 regularly discussed the case with other jurors before deliberations. Breitbart Aff. ¶ 11.

—All jurors conducted pre-deliberations polls regarding the defendants' guilt or innocence. Breitbart Aff. ¶ 11.

—Juror No. 2's vote to convict was "wrongfully the product of having been so fed up with juror number 4 screaming

at her." Breitbart Aff. ¶ 11; Schoen Aff. ¶ 9.

—Juror No. 4 commented that the Jews are responsible for bringing drugs into the Black community. Schoen Aff. ¶ 14.

Based on the above allegations, defendants request a hearing to inquire into the alleged juror misconduct and an order that the verdict be set aside. Defendants also seek the names and addresses or telephone numbers of the jurors for the purpose of further investigating the alleged misconduct.

## DISCUSSION

### I. *Waiver of Claim of Misconduct*

█ In this case, defense counsel did not inform the Court of their discussions with Alternate Juror No. 2 until they submitted the instant motion. That is, although defense counsel knew of these allegations at least at the outset of, if not prior to the deliberations in this case, they chose not to so inform the Court.

In this Circuit, the relevant case law indicates that if a defendant knows of an incident of juror misconduct prior to deliberations or even during deliberations, "but nevertheless stands mute, gambling on an acquittal while holding the issue in reserve", the defendant will be held to have waived any claim for a new trial based on the alleged misconduct. *United States v. Gersh,* 328 F.2d 460, 463 (2d Cir.), *cert. denied,* 377 U.S. 992, 84 S.Ct. 1919, 12 L.Ed.2d 1045 (1964); *accord United States v. Moten,* 582 F.2d 654, 667 (2d Cir.1978) (dictum).

This rule has been applied consistently in this and other circuits. *See United States v. Bolinger,* 837 F.2d 436, 438 (11th Cir.), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988) (counsel's decision "to gamble on the jury rather than inform the court of the problem in time to allow the court to determine if corrective action was possible prior to [the] verdict is fatal to his claims regarding [the allegedly tainted juror]."); *United States v. Breit,* 712 F.2d 81, 83 (4th Cir.1983) ("[a] defendant who remains silent about known juror miscon-

duct who, in effect, takes out an insurance policy against an unfavorable verdict is toying with the court."); *United States v. Dean*, 667 F.2d 729, 731 (8th Cir.), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982) (claim of juror misconduct waived despite its seriousness); *United States v. Nance*, 502 F.2d 615, 621 (8th Cir.1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975) (where attorney was told before deliberations by alternate juror of improper discussions among jurors and failed to inform court, court held that defendants waived claim because "[a] party may not stand idly by, watching the proceedings and allowing the Court to commit error of which he subsequently complains."); *United States v. Shakur*, 723 F.Supp. 925, 935 (S.D.N.Y. 1988), *aff'd*, 888 F.2d 234 (2d Cir.1989), *cert. denied*, 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990).

In this case, the counsel for defendants Ralph and Simon Abcasis have unequivocally acknowledged that they received at least some information about the conduct of which they now complain at the outset of deliberations in this case.[2] Moreover, counsel was aware that the Court was amenable to arguments relating to the dismissal of Juror No. 4 upon a concrete proffer of bias or misconduct. More specifically, the Court indicated that "if you said to me that 'I heard Juror No. 4 say to Juror No. 5, 'I think they are guilty,' I can tell you there would be an immediate hearing." Tr. 2269. In light of this, the Court holds that defen-

dants Ralph and Simon Abcasis have waived any claim of juror misconduct with respect to the claims generated by the pre-deliberation interviews with Alternate No. 2.[3]

Counsel for Rebecca Abcasis, Martin Goldberg, has submitted a letter to the Court indicating that he was not aware of the allegations of Alternate No. 2. As a result, he does not believe that the waiver applies to his client. Based on Mr. Goldberg's representations, the Court agrees that Rebecca Abcasis has not waived her claims of juror misconduct under the above-analysis. However, as indicated below, her claims are nonetheless not a proper basis for the relief she requests.

## II. *Federal Rule of Evidence 606(b)*

The sanctity of jury deliberations is a basic tenet of our system of criminal justice. As a result, inquiries into the deliberative processes that lead to a verdict have long been considered "dangerous intrusions" into the province of the jury. *See Attridge v. Cencorp Div. of Dover Technologies Int'l, Inc.*, 836 F.2d 113, 114 (2d Cir.1987). This tenet is the impetus behind Federal Rule of Evidence 606(b), which provides that a juror "may not testify as to any matter or statement occurring during the course of the jury's deliberations", including anything that may have impacted on any juror's decision as to a particular verdict. Similarly, a juror's affidavit attesting to the foregoing is inadmissible to impeach a verdict. Fed.R.Evid. 606(b).

---

**2.** Defendants' counsel have indicated that further misconduct was uncovered after deliberations, including allegations of religious bias on the part of Juror No. 4. The government contends that these claims are similarly waived because if defense counsel had informed the Court of the allegations stemming from discussions with Alternate No. 2, the Court would have conducted a voir dire that would have revealed any possible religious bias by Juror No. 4. The Court declines to adopt the government's position and limits defendants' waiver to allegations of pre-deliberation juror misconduct. However, the allegations of misconduct during deliberations also are not a proper ground for relief, as explained below.

**3.** Although defendants claim that the fact that they raised the issue of Juror No. 4's behavior

several times during trial precludes the government from relying on waiver, the Court finds this argument unavailing: the claims defendants raise regarding Alternate No. 2's allegations, although nonetheless insufficient to warrant the relief requested, differ qualitatively from the claims raised at trial, which consisted mainly of observations of Juror No. 4's behavior in the jury box and inconclusive assertions regarding her discussion of the evidence. Moreover, the Court does not here hold that defendants have waived their right to argue that Juror No. 4 should have been excused at trial; this argument, having been argued to this Court during trial, is preserved for appeal. It is defendant's claim for post-trial relief based on information obtained from Alternate No. 2 that is waived.

The only exception to this proscription is that a juror "may testify on the question whether *extraneous* prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." (emphasis added). *Id.*

The policy considerations that underlie Rule 606(b) include "encouraging the finality of jury verdicts, conserving judicial resources by foreclosing lengthy adversary hearings on marginal claims of misconduct, and preserving the dignity of the court." Crump, *Jury Misconduct, Jury Interviews, and the Federal Rules of Evidence*, 66 N.C.L.Rev. 509, 512 (1988). Moreover, the rule encourages open and honest deliberations among members of a jury, who can be assured that their contributions to the deliberative process will not subject them to subsequent harassment. *See id.; see also United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir.1989) ("post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juries from deliberating, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts."). Finally, the rule prevents minority jurors from "agreeing" to a verdict only to challenge it at a later date. *See* Crump, *supra* at 512.

### A. Extraneous Influences

Defendants point to several instances of misconduct on the part of Juror No. 4 as the basis for their motion. As noted, this claimed misconduct includes commenting on the evidence throughout the trial, gesturing during the trial in a manner that reflected anti-defense bias, and making anti-Semitic comments. Defendants also point to the fact that pre-deliberations polls were conducted by the jury.

In *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), the Supreme Court enunciated its position on the appropriateness of the use of Rule 606(b) to impeach verdicts based on juror misconduct. In *Tanner*, a juror on the case indicated that "the jury was on one big party": seven of the jurors drank alcohol during the noon recess; four jurors, himself included, consumed among them " 'a pitcher to three pitchers' " of beer during various recesses and smoked marijuana "quite regularly"; on several occasions, two jurors had one or two mixed drinks during lunch, and the foreperson had a liter of wine during lunch on three occasions; one juror sold a quarter pound of marijuana to another and took marijuana, cocaine and drug paraphernalia into the courthouse; one juror ingested cocaine five times during the trial; and the jurors were often asleep during the trial. *Id.* at 115–16, 107 S.Ct. at 2744–45.

Noting the substantial policy considerations supporting the rule against the admission of jury testimony to impeach a verdict, the Court held that "however severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror" do not constitute an "extraneous" or "outside influence" for purposes of the exception to Rule 606(b). *Id.* at 122, 107 S.Ct. at 2748. In support of this position, the Court cited to, *inter alia*, the legislative history of the rule. This history amplifies the distinction between extraneous influences and misconduct or irregularity that falls within the proscription of Rule 606(b):

> [A juror] could testify as to the influence of extraneous prejudicial information brought to the jury's attention (e.g. a radio newscast or a newspaper account) or an outside influence which improperly had been brought to bear upon a juror (e.g. a threat to the safety of a member of his family), but he could not testify as to other irregularities which occurred in the jury room.

*Id.* at 122–23, 107 S.Ct. at 2749 (citing H.R.Rep. No. 93–650, pp. 9–10 (1973), 1974 U.S.Code Cong. & Admin.News 7083). Acknowledging that "postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior," *Tanner*, 483 U.S. at 120, 107 S.Ct. at 2747, the Court nonetheless ruled that the legislative history of Rule 606(b) made it pointedly clear that Congress did not intend that jurors be permitted to testify on juror conduct, including

intoxication, that occurs during deliberations.[4] *Id.* at 125, 107 S.Ct. at 2750. Moreover, the Court noted that this result was consistent with the desirability of maintaining "the finality of the [jury] process". *Id.* at 120, 107 S.Ct. at 2747.

The gravity of the conduct at issue in *Tanner* indicates the seriousness with which courts view post-verdict intrusions into juror conduct, barring an extraneous influence. In the present case, defendants have not alleged any conduct reflecting an outside influence that was brought to bear on the jury. Rather, their allegations relate to misconduct by the jurors themselves—conduct which the Supreme Court has held is not excepted from Rule 606(b)'s prohibition.

In fact, each of the instances of misconduct alleged by defendant has been held an inappropriate ground for a new trial:

### ■ *Alleged Polls and Comments on the Evidence*

■ In *United States v. Piccarreto*, 718 F.Supp. 1088 (W.D.N.Y.1989), the Court held that pre-deliberation "polls" regarding the guilt of the defendants, as well as discussions relating to the evidence as it unfolded, did not warrant a new trial or an evidentiary hearing. *Id.* at 1092. These "reaction[s] to the evidence as it developed" were held not to be extraneous under Rule 606(b). *Id.* at 1093.

### (ii) *Alleged Pressure to Convict*

■ In *United States v. Cuthel*, 903 F.2d 1381 (11th Cir.1990), the court held that the severe pressure jurors may be subject to in reaching a verdict "can suggest the normal dynamic of jury deliberations", and did not provide a basis for post-verdict hearings. *Id.* at 1383; *see also United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir.1988) (defendant failed to show improper outside influence where he alleged that jury felt great pressure to render verdict). Thus, no inquiry into the

jury process is permitted merely because there is information that a jury felt pressured to reach a verdict, as long as that pressure was not exerted by an outside source.

### (iii) *Alleged Anti–Semitic Remarks*

■ In general, evidence of bias is not admissible as "extraneous" under Rule 606(b). Developments in the Law—*Race and the Criminal Process: Racist Juror Misconduct During Deliberations*, 101 Harv.L.Rev. 1595, 1597 (1988); *see Shillcutt v. Gagnon*, 827 F.2d 1155, 1159 (7th Cir.1987); *United States v. Caro–Quintero*, 769 F.Supp. 1564, 1570 (C.D.Cal.1991); Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b)*, 57 Neb.L.Rev. 920, 942 n. 93 (1978) (even egregious racial or ethnic prejudice may be barred by Rule 606(b) because "such proof ... goes to the ... 'mental processes' of these jurors"). However, some courts have held that Rule 606(b) could not be applied to exclude such evidence if "taken at face value, the evidence established a constitutional violation", Developments, *supra* at 1597, because "[i]n egregious cases the resulting misconduct might offend fundamental fairness even though the legislative history of Rule 606(b) argues for juror privacy." Crump, *Jury Misconduct, Jury Interviews, and the Federal Rules of Evidence*, 66 N.C.L.Rev. 509, 524 (1988); *see United States v. Dean*, 647 F.2d 779, 785 (8th Cir.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *Smith v. Brewer*, 444 F.Supp. 482, 485 (S.D.Iowa), *aff'd*, 577 F.2d 466 (8th Cir.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978) (if racially biased remarks were likely to have prejudiced the case, court indicated it might have considered juror testimony competent, in spite of Rule 606(b)).

■ In this district, it has been held that evidence of bias may be sufficient to establish a constitutional violation if there is

---

**4.** The Court notes that the proscription of Rule 606(b) has been held to apply similarly to conduct occurring prior to deliberations. *See United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir.1990). In fact, *Tanner*, which directly addressed such pre-deliberation conduct, implicitly extended Rule 606(b) to cover this situation.

"clear and incontrovertible" or "substantial if not wholly conclusive evidence" that it was "more likely than not" that a juror was biased and that his bias affected the actual deliberations. *Wright v. United States*, 559 F.Supp. 1139, 1151 (E.D.N.Y. 1983), *aff'd*, 732 F.2d 1048 (2d Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). Assuming as true defendants' allegations that Juror No. 4 stated: "It's Jews who bring drugs into our [the African–American] community", the Court is dismayed at this display of intolerance. However, the Court cannot find that such a statement rises to the level of "substantial and incontrovertible" evidence that Juror No. 4 was biased and that this bias affected the actual deliberations.[5] In determining whether this allegation meets the above stringent standard, the Court considers the indirect nature of the source of these allegations, which are affidavits prepared by the attorneys in this case and consisting of hearsay allegations. As explained more fully below, the Court finds that such submissions do not carry nearly the weight of sworn statements based on personal knowledge.

Perhaps more importantly, defendants have submitted no information indicating that this display of bias impacted upon the jury in their deliberations, *see* 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 606[04] (1976) ("in the heat of juror debate all kinds of statements may be made which have little effect on the outcome, though taken out of context they seem damning and absurd"), or even necessarily affected Juror No. 4's impartiality.[6] *See*

*United States v. Dean*, 647 F.2d 779, 785 (8th Cir.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982) (court notes that expressions of bias are not necessarily a ground for a finding that a juror was not impartial). Accordingly, the Court finds that this alleged statement of bias by Juror No. 4 is not an appropriate ground for the relief defendants seek.

In conclusion, there is substantial support for the government's position that pursuant to Rule 606(b)'s proscription against juror testimony on internal or nonextraneous matters, none of defendant's alleged claims of juror misconduct warrant an evidentiary hearing[7] or a new trial. Thus, although Ralph and Simon Abcasis have only waived those claims arising out of Alternate No. 2's allegations, all three defendants' claims, including those occurring during deliberations, are barred by Rule 606(b).

### III. *Attorney Affidavits*

■ In this case, as discussed above, none of the conduct that defendants cite in support of their motion constitutes "extraneous" conduct under Rule 606(b). Defendants' motion is denied on that ground, as well as on the ground that Ralph and Simon Abcasis have waived their objection to conduct occurring prior to deliberations. However, the Court notes additionally that it is troubled by the submission of attorney affidavits citing the juror misconduct. The law is clear that a trial court is required to hold a post-verdict investigation only "when there is clear, strong, substantial

---

**5.** Some commentators have argued that the Supreme Court's decision in *Tanner v. United States*, 483 U.S. 107, 120, 107 S.Ct. 2739, 2747, 97 L.Ed.2d 90 (1987), "raises doubts about whether juror testimony should be admitted even when it does meet this exacting prejudice standard" since *Tanner* suggests that "Rule 606(b) is never unconstitutional as applied." Developments, *supra* at 1598. Because the Court finds that defendant has not met this standard in any case, the Court need not reach this issue.

**6.** The Court declines to adopt defendants' position, enunciated in their reply papers, that "the statement itself ... is unequivocal evidence that juror number 4 based her decision on her extra-

neous racial." Reply Memorandum at 21. The Court finds that the case law in this area does not contemplate such a leap in logic.

**7.** Because juror testimony is barred on these facts, and because there is no other evidence of misconduct aside from juror testimony, an evidentiary hearing would be futile in this case. *See Young v. United States*, 163 F.2d 187, 189–90 (10th Cir.1947), *cert. denied*, 334 U.S. 859, 68 S.Ct. 1533, 1534, 92 L.Ed. 1779, 1780 (1948) (because members of the jury could not testify in support of defendant's motion alleging juror misconduct, "the remand of the causes would amount to nothing less than a vain and useless gesture").

and incontrovertible evidence ... that a specific, non-speculative impropriety has occurred which could have prejudiced the trial of a defendant." *United States v. Sun Myung Moon,* 718 F.2d 1210, 1234 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). Short of such a showing, policy considerations dictate that jurors not be hauled into court " 'in an effort to secure from them evidence of facts which might establish misconduct sufficient to set a aside a verdict.' " *Attridge v. Cencorp Div. of Dover Technologies Int'l, Inc.,* 836 F.2d 113, 115 (2d Cir.1987) (citing *McDonald v. Pless,* 238 U.S. 264, 267–68, 35 S.Ct. 783, 784–85, 59 L.Ed. 1300 (1915)).

In this case, the conclusory statements submitted by defendants' counsel in support of this motion, all of which are based on hearsay allegations, can hardly meet such a stringent requirement.[8] In fact, the New York Court of Appeals has held on more than one occasion that a trial court may properly deny a defendant's claims of juror misconduct on the sole ground that the only proffer in support thereof is the hearsay allegations contained in the affidavit of defense counsel and/or a private investigator employed by him. *See People v. Friedgood,* 58 N.Y.2d 467, 473, 462 N.Y.S.2d 406, 409, 448 N.E.2d 1317, 1320 (1983); *People v. Salaam,* — A.D.2d —, —, 590 N.Y.S.2d 195, 196 (1st Dept.1992) (court upheld trial court's summary denial of defendant's post-judgment motion on ground that contention that jurors read newspapers during proceedings was pure hearsay); "Juror Misconduct Issue Weighed in 2 Appeals", New York L.J., November 29, 1992, at p. 1 col. 4.

■ While these New York state cases are obviously not binding on this Court, the rationale employed is certainly relevant to the instant case: the Court should not take the drastic step of requiring jurors to come to court and testify in an evidentiary hear-

ing in the absence of evidence of juror misconduct based on *personal knowledge.*

## IV. *Interviews With Jurors*

■ In their various submissions to the Court on this issue, defendants have requested that the Court provide them with the names and addresses or telephone numbers of the jurors who served on this case in an effort to interview them with respect to the above-mentioned allegations. Although Rule 606(b) is silent on the propriety of counsel interviewing jurors after they have been discharged, the rules relating to post-trial interviewing of jurors implicate many of the same interests as the rules relating to the admission of juror testimony to impeach a verdict. *United States v. Moten,* 582 F.2d 654, 665 (2d Cir.1978). Among these concerns is avoiding: the harassment of jurors; the inhibition of deliberations in future cases; a deluge of postverdict applications; and the uncertainty of verdicts. *See King v. United States,* 576 F.2d 432, 438 (2d Cir.1978) (citing *United States v. Crosby,* 294 F.2d 928, 950 (2d Cir.1961), *cert. denied,* 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962)).

■ Accordingly, a convicted defendant may not "inconvenience jurors merely to conduct a fishing expedition" unless he has made a showing, with " 'strong' " and " 'clear' " evidence, *see King,* 576 F.2d at 438 (quoting *United States v. Dioguardi,* 492 F.2d 70, 78, 79, 80 (2d Cir.1974)), of events at trial that "support a reasonable suspicion that the jury may have been corrupted." *Id.* at 666; *see United States v. Sanchez,* 380 F.Supp. 1260 (N.D.Tex.1973), *aff'd,* 508 F.2d 388 (5th Cir.1975), *cert. denied,* 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975) (interviews should only be conducted in extreme situations). The Court finds that the "frail and ambiguous showing" in this case, consisting of attorney affidavits based on hearsay allegations,

---

8. Defendants' assertion in their reply papers that they have a tape-recording of the conversation with Juror No. 2 does not impress the Court and would not enable defendants to meet the requisite showing: first, the recording was not submitted in conjunction with this motion; and second, and more importantly, such a recording does not have the force of sworn testimony or a sworn statement.

fails to meet this requirement. *See King,* 576 F.2d at 438.

The Second Circuit has stated that "complicity by counsel in a planned, systematic, broad-scale, posttrial inquisition of the jurors by a private investigator or investigators is reprehensible, to say the least." *United States v. Brasco,* 516 F.2d 816 at 819 n. 4 (2d Cir.1975). Thus, "at a minimum", counsel must notify the Court of its intention to conduct post-trial questioning of jurors so that the court may "take full control of the matter", *United States v. Moten,* 582 F.2d 654, 665–66 (2d Cir.1978), and order that such questioning, where warranted, "be conducted under the strict supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper." *King,* 576 F.2d at 438 (quoting *United States v. Brasco,* 385 F.Supp. 966, 970 n. 5 (S.D.N.Y.1974), *aff'd,* 516 F.2d 816, 819 n. 4 (2d Cir.), *cert. denied,* 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975) (on appeal, quoted language was specifically approved by Second Circuit in affirming judgment of conviction)); *see Miller v. United States,* 403 F.2d 77, 81–82 (2d Cir. 1968). In this case, defendants have persisted in their attempts, however unavailing, to interview jurors without notifying the Court and without the Court's prior approval or supervision. Such efforts are completely inappropriate and are hereby ordered ceased.[9]

## CONCLUSION

For the foregoing reasons, the Court declines defendants' motion for an evidentiary hearing and/or a new trial on the ground of juror misconduct. The Court further denies defendants' request for the names and addresses or telephone numbers of jurors on the case and orders defendants to cease their efforts, if any, to contact jurors.[10]

SO ORDERED.

---

9. The fact that defendants obtained this information in violation of Second Circuit law is arguably the basis for the Court to ignore the affidavits submitted in support of defendants' motion and to deny the motion on that ground. *Cf. Tanner v. United States,* 483 U.S. 107, 125, 107 S.Ct. 2739, 2750, 97 L.Ed.2d 90 (1987) (where juror affidavit submitted in support of motion was obtained in violation of local rule barring post-verdict interviews absent a court order, district court "would have been acting within its discretion in disregarding the affidavit").

10. In his reply papers, Ralph Abcasis seeks a hearing regarding the whereabouts of Joseph Daniel in the Spring of 1992. Because this issue was first raised in reply papers, it is not properly before the Court and the Court declines to address it.