**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 6, 2005
THOMAS K. KAHN
CLERK

_____

**No. 05-11836**
**Non-Argument Calendar**

_____

D. C. Docket No. 03-00088-CR-1-1

UNITED STATES OF AMERICA,

                                                          Plaintiff-Appellee,

                              versus

GERALD SMITH,
a.k.a. Jason Thomas,

                                                          Defendant-Appellant.

_____

**Appeal from the United States District Court**
**for the Northern District of Georgia**

_____

**(December 6, 2005)**

Before **DUBINA, CARNES** and **HULL**, Circuit Judges.

**PER CURIAM:**

Early one morning in October of 2002, Gerald Smith was one of four passengers riding in a car driven by Zonquil Bailey. Police officers stopped the car for a traffic violation. During a search of the car and its occupants, the officers found marijuana on Bailey's person and twenty-six small plastic bags of marijuana and $3,305 in cash on Smith's person. The officers also found a gun but the location of the find is in dispute. The officers arrested Smith and Bailey.

On February 12, 2003, Smith was indicted on three counts stemming from these events: (1) unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g); (2) possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(D); and (3) possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). He pleaded not guilty to all counts, and the case was tried to a jury in November of 2004.

During the trial, Smith called Bailey as a witness. Bailey testified that before the arrests, he met with Smith, drove him to a pool hall, and observed him shoot pool and win a substantial sum of money gambling. He testified that he and Smith bought bags of marijuana from a man at the pool hall. He testified that later, during the traffic stop, the officers asked for the occupants' identification and then asked them to step out of the car. Finally, Bailey testified that, after he, Smith, and

the other passengers were handcuffed and sitting on the side of the road, an officer found a gun in the car.

During direct examination, the Government objected and approached the district court with concerns about Bailey's Fifth Amendment privilege against self-incrimination and his right to counsel. The district court informed Bailey of his self-incrimination privilege and his right to appointed counsel. Bailey responded that the State had dismissed the case stemming from his arrest on October 20, 2002. The Government noted that Bailey had two unrelated drug cases pending in state court. The district court informed Bailey that his testimony in Smith's federal case could be used against him in his own cases in state court. Bailey then requested a lawyer.

During a court recess, the district court considered the nature of Bailey's testimony and referred to persuasive authority from other circuits for direction on how it should be used. The court stated that while it could strike the entire testimony, it should consider parsing the testimony and just striking the questions and answers on the subject of marijuana. The Government moved to strike the entire testimony because striking specific items could be confusing and misleading to the jury and would limit the Government's cross examination and impeachment of Bailey.

3

After a court recess and meeting in chambers, Bailey's newly appointed counsel advised the district court that Bailey was invoking his self-incrimination privilege "as to anything." The Government again moved to strike Bailey's entire testimony, and Smith countered that the privilege did not apply to the entire testimony. Smith argued that Bailey did not have a privilege as to his testimony regarding the following subjects: his meeting with Smith, the drive to the pool hall, his observation of Smith shooting pool and gambling, and his observation of the officer finding a gun.

The district court stated that the crime as to which Bailey was asserting his Fifth Amendment privilege was the marijuana possession. The court stated that any testimony from Bailey would put him in the presence of Smith, who was found to possess marijuana, thereby suggesting that Bailey also was in possession of the drug. Before the jury entered, Smith stated that Bailey would have testified about Smith's gambling and his purchase and use of marijuana at the pool hall. Smith objected to the court's complete exclusion of his testimony based on Fifth and Sixth Amendment grounds.

After the jury returned, the district court struck all of Bailey's testimony and the defense rested. The jury found Smith guilty of all three counts. On March 9, 2005, the district court sentenced Smith to sixty months imprisonment on each of

4

the first two counts, to be served concurrently, and sixty months on the third count, to be served following the sentences imposed on the first two counts.

On appeal, Smith first contends that the district court erred in allowing Bailey to invoke his privilege against self-incrimination and in striking his entire testimony. We review de novo a district court's ruling on an invocation of the self-incrimination privilege. United States v. Hernandez, 141 F.3d 1042, 1049 (11th Cir. 1998). Nonetheless, a district court enjoys wide discretion in resolving a self-incrimination claim. United States v. Melchor Moreno, 536 F.2d 1042, 1050 (5th Cir. 1976). If we find that the district court has erred and that the defendant has properly preserved an objection, the error is subject to the harmless error standard of Fed. R. Crim. P. 52(a). United States v. Candelario, 240 F.3d 1300, 1307 (11th Cir. 2001). This rule places the burden on the Government to demonstrate that the error does not affect the defendant's substantial rights. Id. at 1307 n.9.

The Fifth Amendment's self-incrimination clause provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This prohibition permits a person to refuse to answer official questions at any proceeding where his answers might incriminate him in future criminal proceedings. Minnesota v. Murphy, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984).

In deciding whether or how much testimony to exclude under a Fifth Amendment privilege claim, the district court examines: (1) whether the witness's fear of self-incrimination is well-founded; (2) the parameters of the witness's Fifth Amendment rights in context of the testimony sought; and (3) the materiality and relevancy of the potentially excluded testimony. See Melchor Moreno, 536 F.2d 1049–50. The privilege applies only in "instances where the witness has reasonable cause to apprehend danger" of criminal liability. Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951).

A district court must make a particularized inquiry, evaluating whether the privilege applies with respect to each specific area that the questioning party wishes to explore. Melchor Moreno, 536 F.2d at 1049. The witness may be totally excused from testifying only if the court finds that he could legitimately refuse to answer essentially all relevant questions. United States v. Goodwin, 625 F.2d 693, 701 (5th Cir. 1980). Where parts of the testimony would not be incriminating, the witness may be called to give that testimony and should be allowed to be silent "[o]nly as to genuinely threatening questions." Melchor Moreno, 536 F.2d at 1049. Any conflict between a defendant's Sixth Amendment cross-examination right and a witness's Fifth Amendment self-incrimination privilege should be resolved in favor of the witness's right to silence. United States v. Cuthel, 903

6

F.2d 1381, 1384 (11th Cir. 1990). It is not reversible error to exclude testimony that is cumulative. See Hernandez, 141 F.3d at 1050.

Because Bailey had reasonable cause to apprehend danger of criminal liability based on the state charges pending against him at the time of trial and the possibility of future state and federal charges stemming from his testimony, the district court did not err in allowing him to invoke his Fifth Amendment privilege against self-incrimination. The district court followed proper procedure, holding inquiry in chambers as to Bailey's claim and determining that it could not parse out the non-privileged testimony. Because any non-privileged testimony that was excluded was cumulative, the district court did not err in striking Bailey's entire testimony.

Smith next argues that the district court erred in denying his motion for judgment of acquittal on the third count because the evidence was insufficient to convict Smith of using and carrying a firearm during and in relation to a drug-trafficking crime. We review de novo whether the record contains sufficient evidence to support a jury's verdict. United States v. Byrd, 403 F.3d 1278, 1288 (11th Cir. 2005), cert. denied, 126 S. Ct. 243 (2005). The evidence is viewed in the light most favorable to the Government, with all reasonable inferences and credibility choices drawn in the Government's favor. Id. A conviction must be

upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence.  Id.

A violation of 18 U.S.C. § 924(c) occurs when a person who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  18 U.S.C. § 924(c).  The term "carrying" has been construed to include carrying a weapon on the person or in a car.  See United States v. Timmons, 283 F.3d 1246, 1250 (11th Cir. 2002).

Smith does not contest the conviction for the drug-trafficking offense, so we must only consider the role of the gun and Smith's relation to it.  The Government presented testimony from an officer that she saw a loaded gun in Smith's right hand and that she found bags of marijuana and cash in his right pocket.  Smith countered that the gun was found in the car only after all the occupants were handcuffed and seated on the side of the road.  Because the evidence showed that the gun was either found on Smith's person or in the car in which Smith was a passenger, sufficient evidence exists for the jury to find that Smith was carrying a firearm during a drug-trafficking crime.  Furthermore, because guns are inherent in the drug-trafficking business, it was reasonable for the jury to conclude that the gun found during the search was being carried or used in relation to a drug-trafficking crime.  See United States v. Thomas, 242 F.3d 1028, 1032 n.5 (11th

8

Cir. 2001).  Accordingly, the jury found Smith guilty of violating section 924(c)

under a reasonable construction of the evidence.

    **AFFIRMED.**