[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15186
_____

D.C. Docket No. 9:17-cv-81162-BB

JUAN TORRES,
ALEJANDRO TORRES,

                                        Plaintiffs-Appellees,

versus

FIRST TRANSIT, INC.,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 20, 2020)

Before NEWSOM and TJOFLAT, Circuit Judges, and PROCTOR[*], District Judge.

TJOFLAT, Circuit Judge:

_____

[*] The Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

I.

On September 30, 2017, a bus owned by First Transit, Inc. ("First Transit") struck a vehicle occupied by Juan Torres and Alejandro Torres ("the Torreses") at the intersection of North Military Trail and NW 19th Street in Boca Raton, Florida. The Torreses were severely injured. Juan Torres suffered fractures to his spine, right leg, and right ankle; Alejandro Torres suffered fractures to his ribs, right leg, and sternum. The Torreses brought a claim for damages against First Transit in the United States District Court for the Southern District of Florida, alleging that the driver of First Transit's vehicle was negligent and that First Transit was responsible for the Torreses' injuries. First Transit admitted liability, and the District Court held a three-day jury trial on the issue of the amount of damages incurred by the Torreses. The jury awarded Alejandro Torres a total of $2,496,261.13 in damages, and the jury awarded Juan Torres a total of $4,927,604.38 in damages.[1]

First Transit moved for a new trial based on its post-trial discovery of the litigation histories of two trial jurors, identified as Y.C. and E.S., which were not disclosed during the jury selection process. Specifically, First Transit discovered

---

[1] Specifically, Alejandro Torres was awarded $396,261.13 in past medical expenses incurred, $600,000 in past pain and suffering damages, and $1,500,000 in future pain and suffering damages. Juan Torres was awarded $877,604.38 in past medical expenses, $1,050,000 in past pain and suffering damages, and $3,000,000 in future pain and suffering damages.

that Juror Y.C. had been a defendant in eight civil litigation matters, and Juror E.S. had been involved in five civil litigation matters.[2] Y.C.'s litigation history includes multiple suits to collect unpaid credit card debt, two foreclosure actions on property for which she was a mortgagor, and a lawsuit of undisclosed nature brought against her by the state of Florida. E.S.'s litigation history includes two foreclosure actions brought by a condominium association for his failure to pay assessments, costs, and fees associated with his unit, as well as several suits brought against him to collect unpaid debts.

The jurors in this case completed two forms prior to trial. The first, a "juror qualification form," is part of the District Court's juror selection plan and was mailed to prospective jurors alongside their jury summons to help the District Court determine the prospective jurors' eligibility to serve. United States District Court for the Southern District of Florida, *Plan For The Random Selection Of Grand And Petit Jurors* (May 5, 2010), available at https://www.flsd.uscourts.gov/sites/flsd/files/JuryPlan.pdf. All prospective jurors were required to complete this questionnaire and return it to the clerk of court. *See id.* at Section VII, "Drawing of Names from the Master Jury Wheel; Completion of Juror Summons and Questionnaire Form" (incorporating 28 U.S.C. § 1864(a)).

---

[2] Though the District Court suggested that E.S.'s litigation history included a sixth matter, a personal bankruptcy, the evidence provided by First Transit does not appear to include any bankruptcy filings.

Once the venire was summoned pursuant to the District Court's juror selection plan, the prospective jurors assigned to District Judge Bloom's court completed a second form, Judge Bloom's "Juror Questionnaire in Civil Cases" (the "juror questionnaire"), which we have attached to this opinion for ease of reference. *See* Attachment 1. Generally speaking, the juror questionnaire covers subjects like the prospective jurors' education, employment, and hobbies, as well as the prospective jurors' previous experiences in lawsuits and with juries. *Id.* The prospective jurors were not aware of the subject matter of this case at the time they responded to the juror questionnaire, and the questionnaire was completed prior to the commencement of *voir dire*. Indeed, the District Court acknowledged before *voir dire* began that the parties' need for background questioning of the jurors was obviated by the fact that their counsel "ha[d] the benefit of the completed [juror] questionnaires."[3]

First Transit's motion for a new trial focused on Y.C.'s and E.S.'s responses to a question on the juror questionnaire and to a question posed on *voir dire*. On question 10 of the juror questionnaire, prospective jurors were asked: "If you and/or a close family member or friend has ever been a party to a lawsuit (i.e., sued

---

[3] Although the juror questionnaire was completed prior to *voir dire*, a prospective juror's answers to the questionnaire are treated as equivalent to answers on *voir dire*. *See, e.g.*, *United States v. North*, 910 F.2d 843, 903–04 (D.C. Cir.) (juror's concealment of brothers' prior criminal convictions on questionnaire treated as "juror withhold[ing] critical information on *voir dire*"), *opinion withdrawn and superseded in part on other grounds*, 920 F.2d 940 (D.C. Cir. 1990).

someone or been sued by someone) please describe the circumstances." *See* Attachment 1.  Despite their litigation histories, Y.C. answered "N/A," and E.S. answered "No."  Similarly, during *voir dire*, the prospective jurors were asked by the Court: "Is there anyone that has been involved in a civil lawsuit that has shaped your view either negatively or positively about the legal system that you believe would have an effect on your ability to serve as a fair and impartial juror?"  Again, neither Juror Y.C. nor Juror E.S. responded affirmatively.

First Transit contends that both jurors' failure to disclose their litigation histories in response to these questions was, in both cases, an "affirmative concealment" suggesting a lack of impartiality.  Accordingly, First Transit argues that it is entitled to a new trial—or, at least, an evidentiary hearing to determine unresolved questions of fact necessary to decide whether Y.C. and E.S. were challengeable for cause.

Below, the District Court denied First Transit's motion for a new trial without holding an evidentiary hearing to investigate the jurors' alleged misconduct.  The Court first assumed that Y.C.'s and E.S.'s pre-*voir dire* juror questionnaire responses were dishonest.  The Court found, however, that the jurors' silence during *voir dire* questioning "could only be speculated to be dishonest" because of the question's qualifier—it asked only about litigation history that "shaped [the juror's] view . . . about the legal system."  As a result, the

5

District Court declined to assume that the jurors' failure to respond was dishonest because, without an evidentiary hearing, it could not know the jurors' views of the legal system.

Next, the District Court held that First Transit had not shown that either juror, had they answered the questionnaire honestly, would have been challengeable for cause based on an inability or unwillingness to be impartial. This conclusion primarily turned on the Court's finding that Y.C.'s and E.S.'s previous litigation history had "little to no connection [to] the present case." The District Court reasoned that "[a]n individual's history of having been sued by corporations bears only a very general connection to a case in which an unrelated corporation is a defendant," and that there is otherwise little in common between a personal injury case like the Torreses' and "a lawsuit by a bank to recover a debt, a foreclosure, a lawsuit by a condominium association to recover unpaid assessments, or a personal bankruptcy"—the sorts of cases in which Y.C. and E.S. had been involved.

In addition, the District Court found that the jurors' misstatements contained no indication of bias against First Transit. In response to First Transit's suggestion that the jurors may have been biased in favor of the Torreses, the Court stated that there was "no evidence that [either juror] had a motive to intentionally omit from their jury questionnaire that they had been defendants in lawsuits for recovery of

6

debts so that they could serve on a jury to award Plaintiffs the full amount of their medical bills, particularly given that jurors completed the questionnaires before they were made aware of this potential issue." The Court further noted that both Y.C. and E.S. indicated during *voir dire* that they "were willing and able to be fair and impartial in this case." Ultimately, the District Court determined that it was not "required to hold an evidentiary hearing to investigate the issue [of the jurors' misconduct] further," thus ruling that, as a matter of law, First Transit had failed to make a case that either juror was unwilling or unable to be impartial.

First Transit appealed.[4] After reviewing the record and with the benefit of oral argument, we vacate the District Court's order denying First Transit's motion for a new trial and remand for an evidentiary hearing on the question of Y.C.'s and E.S.'s impartiality.

## II.

We review a district court's decision whether to grant a new trial or an evidentiary hearing for abuse of discretion. *United States v. Quilca–Carpio*, 118 F.3d 719, 722 (11th Cir. 1997). "A district court abuses its discretion if it applies

---

[4] As an alternative basis for relief, First Transit also requests remittitur, or a new trial, on the theory that the jury's verdict was excessive and was not supported by the evidence. The District Court denied relief on this ground, finding that the amount of the verdict was supported by the evidence and was not excessive. Because we are remanding this case to the District Court for an evidentiary hearing to determine whether the jury was impartial in reaching its verdict and to decide whether a new trial is warranted on that ground, we do not reach First Transit's excessive-verdict arguments.

an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (quoting *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1216–17 (11th Cir. 2009)).  A "clear error in judgment" is also an abuse of discretion.  *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).

## III.

Our legal system provides litigants the right to a "fair trial," and a "touchstone" of that right is "an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it."  *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 849 (1984) (internal quotation marks omitted).  The *voir dire* process, and the attendant right of the parties to challenge for cause the inclusion of potential jurors on the jury panel, safeguard that right by seeking to prevent jurors who are incapable of impartiality from deciding the case.  *Id.*  "The necessity of truthful answers by prospective jurors" is "obvious": These safeguards cannot function effectively when a later-empaneled juror commits misconduct by failing to honestly answer questions posed on *voir dire*.  *Id.*  If the juror's deceit is not discovered until after a verdict has been rendered, the fundamental fairness of the entire trial is in question.

8

To obtain a new trial for juror misconduct that occurred during the jury selection process, a party must make two showings: (1) "that a juror failed to answer honestly a material question on *voir dire*," and (2) "that a correct response would have provided a valid basis for a challenge for cause." *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001) (citing *McDonough*, 464 U.S. at 556, 104 S. Ct. at 850). *McDonough*'s first prong "requires a determination of whether the juror's answers were honest." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir. 1992). Then, to satisfy the second prong, there must be a showing of "actual bias," which may be shown "either by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *Carpa*, 271 F.3d at 967. Put simply, if a juror's failure to answer a question honestly suggests that the juror could not have impartially evaluated the evidence at trial and applied it to the law as instructed by the trial judge, then the fairness of the trial has been impugned, and the moving party is entitled to a new trial. *See McDonough*, 464 U.S. at 556, 104 S. Ct. at 850.

When allegations of juror misconduct surface after trial, the investigation of the alleged misconduct "is committed to the discretion of the district court and is reviewed only for an abuse of that discretion." *United States v. Prosperi*, 201 F.3d 1335, 1340 (11th Cir. 2000). There is no per se rule that requires a district court to

investigate all claims of juror misconduct, *United States v. Cuthel*, 903 F.2d 1381, 1382–83 (11th Cir. 1990), and a district court has the discretion to decide a motion for a new trial without conducting an evidentiary hearing to investigate, *see United States v. Schlei*, 122 F.3d 944, 994 (11th Cir. 1997). Indeed, we have stated that an evidentiary hearing is not required if "the record contain[s] all the evidence needed to dispose of each of the grounds asserted as a basis for a new trial." *United States v. Scrushy*, 721 F.3d 1288, 1305 n.30 (11th Cir. 2013).

But a district court must investigate juror misconduct when the party alleging misconduct makes an "adequate showing" of evidence to "overcome the presumption of jury impartiality." *Cuthel*, 903 F.2d at 1383 (citations omitted).[5] Once the duty to investigate is triggered, the district court has "substantial discretion in choosing the investigative procedure to be used in checking for juror misconduct." *United States v. Register*, 182 F.3d 820, 840 (11th Cir. 1999) (quotation marks omitted). To justify a post-trial evidentiary hearing involving jurors' misconduct, a moving party must show "clear, strong, substantial and

[5] Our presumption of impartiality hinges on the honesty of prospective jurors on *voir dire*. *See, e.g.*, *McDonough*, 464 U.S. at 554, 104 S. Ct. at 849 (discussing the "necessity of truthful answers by prospective jurors"); *id.* at 464 U.S. at 556, 104 S. Ct. at 850 (Blackmun, J., concurring) ("[T]he honesty or dishonesty of a juror's response [on *voir dire*] is the best initial indicator of whether the juror in fact was impartial."). Jurors "t[ake] their oath" to be honest, and "absent evidence to the contrary, we must presume that they [a]re fair and impartial, as indeed they sw[ear] to be." *United States v. Khoury*, 901 F.2d 948, 955 (11th Cir.), *opinion modified on denial of reh'g*, 910 F.2d 713 (11th Cir. 1990). Of course, when prospective jurors are dishonest, the *voir dire* process simply fails to "serve its purpose." *McDonough*, 464 U.S. at 554, 104 S. Ct. at 849.

10

incontrovertible evidence that a specific, nonspeculative impropriety has occurred." *Cuthel*, 903 F.2d at 1383 (quotation marks and alterations omitted). "The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate." *Id.* (quotation marks omitted).

A few cases outline the contours of a district court's discretion to investigate (or not to investigate) a juror's dishonesty on *voir dire*. In *United States v. Carpa*, criminal defendants moved for a mistrial based on a juror's failure to fully disclose his criminal history during *voir dire*. 271 F.3d at 963–65. The defendants argued that this omission was deliberate and was based on the juror's improper motivation to serve on the jury in order to earn a reduction of his unrelated criminal sentence. *See id.* at 967–68. The District Court asked the FBI to investigate the juror, his dishonest statements, and his criminal history; the Court then held a hearing at which the investigating agent testified. *Id.* at 965–66. After the agent testified to the juror's "criminal record and motive" based on interviews with the juror and his probation officer, the District Court determined that the hearing established no basis for a mistrial because there was insufficient evidence that the juror lacked impartiality. *Id.* at 966.

On appeal, we held that the District Court's finding was an abuse of discretion. *Id.* at 967–68. Even though the District Court held an evidentiary hearing, it relied only on the testimony of the investigating agent and did not

11

receive the testimony of the allegedly partial juror. *Id.* We found that the District

Court's investigative methods left unresolved "significant, appeal-determinative"

questions of dishonesty and bias, particularly because the District Court and

defense counsel did not have a chance to participate in the investigating agent's

interview of the juror. *Id.* at 967–68. Accordingly, we remanded the case with

instructions to conduct a proper investigation, which included "cross-examination

of the juror by defense counsel" and "questioning of the [allegedly partial] juror in

camera if necessary." *Id.* at 968.

Similarly, in *Vezina v. Theriot Marine Service*, personal-injury plaintiff

Allen Vezina, a seaman who was injured while mopping a slippery galley deck,

filed a motion for a new trial and for an evidentiary hearing concerning the alleged

misconduct of a juror. 554 F.2d 654 (5th Cir. 1977).[6] In the District Court, Vezina

argued that he was prejudiced by the presence of "Mrs. Lowery" on the jury

because she failed to disclose on *voir dire* that she and her husband had a $500,000

personal injury suit pending against them. *Id.* at 655. For example, the trial judge

asked on *voir dire*: "Have any of you or any members of your immediate family

within the last ten or fifteen years sustained any injuries or damages growing out of

an accident which might have resulted in a claim against some other person,

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the creation of the Eleventh Circuit on September 30, 1981.

insurance company, partnership or corporation." *Id.* at 656 n.3.  The jury panel understood this question to relate to both plaintiff *and* defendant participation in personal injury cases, and other jurors disclosed their involvement as both plaintiffs and defendants in past cases.  *Id.*  Mrs. Lowery, however, did not disclose the pending personal injury suit in response to the District Court's question, and her nondisclosure was only discovered when one of the alternate jurors relayed the information to Vezina's counsel after trial.  *Id.* at 655.  Vezina moved for a new trial based on this information.  *Id.*  The parties did not dispute that Mrs. Lowery and her husband were defendants in the personal injury suit, and it was revealed that Mrs. Lowery actually disclosed this information on *voir dire* for jury selection in another case on the same day.  *Id.* at 655–56.  Despite Mrs. Lowery's apparent dishonesty, the District Court denied Vezina's motion for a new trial without conducting an evidentiary hearing.  *Id.* at 656.

On Vezina's appeal, the Fifth Circuit stated that it was "clear" that Mrs. Lowery "failed . . . to disclose the pending litigation against her and her husband, despite general questioning on voir dire by the trial judge and counsel," and the Court commented on the "gravity" of Mrs. Lowery's nondisclosure.  *Id.* at 655–56.  Consequently, the Court remanded the case to the district court for an evidentiary hearing to resolve the "issues of alleged juror misconduct and the possible prejudicial effect thereof."  *Id.* at 656.

13

And *United States v. Venske* is informative.  296 F.3d 1284 (11th Cir. 2002).

In *Venske*, defendants William and Chantal—who were convicted of various

offenses related to a fraudulent telemarketing scheme—appealed the District

Court's denial of their motions for a new trial and for an evidentiary hearing based

on alleged juror misconduct.  *Id.* at 1286.[7]  Following their trial and sentencing, the

defendants filed two affidavits from private investigators alleging juror misconduct

and extrinsic influence on jurors.  *Id.* at 1287–88.  After considering the motions

and the supporting affidavits, the District Court found that William and Chantal

failed to offer sufficient evidence in support of their motions, declined to hold an

evidentiary hearing, and denied William's and Chantal's motions for a new trial.

*Id.* at 1289.

We held on appeal that the first of William's and Chantal's affidavits, the

"Porter Affidavit," failed to demonstrate that the juror at issue was influenced by

the statements described in the affidavit, and thus the District Court did not abuse

its discretion in concluding that the Porter Affidavit was insufficient evidence of

juror misconduct or extrinsic influence on the jury.  *Id.* at 1290.  By contrast, the

second affidavit, referred to as the "Roberts Affidavit," "clearly involve[d]

extrinsic communications that, if properly presented to the district court,

---

[7] The District Court did grant evidentiary hearings to two other defendants, Venske and Higgins, who had also filed motions for a new trial.  *Venske*, 296 F.3d at 1288–89.

14

necessitate[d] further inquiry." *Id.* at 1291. But because the Roberts Affidavit was obtained in violation of a local rule prohibiting attorneys or litigants from contacting jurors absent prior court approval, we concluded that the District Court was right to exclude the Roberts Affidavit, and we affirmed its denial of William's and Chantal's motions for a new trial and for an evidentiary hearing. *Id.* at 1292. We reasoned that, without the Roberts Affidavit, William and Chantal were not entitled to an evidentiary hearing because they "failed to make an adequate showing of juror misconduct or extrinsic influence on the jury." *Id.* But had the Roberts Affidavit been admissible, an evidentiary hearing would have been necessary to investigate whether the jury was impartial. *Id.* at 1291.

We read these cases together to say that when a party moving for a new trial based on a juror's nondisclosure during *voir dire* makes a *prima facie* showing that the juror may not have been impartial and thus was plausibly challengeable for cause—in other words, when the moving party has presented "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred"—the district court must hold an evidentiary hearing prior to ruling on the motion for a new trial in order to adequately investigate the alleged juror misconduct. *See Cuthel*, 903 F.2d at 1383.

Here, First Transit presented the District Court with "clear, strong, substantial, and incontrovertible evidence that a specific, nonspeculative

15

impropriety" occurred—namely, court documents that, on their face, showed that Jurors Y.C. and E.S. gave dishonest and misleading responses on their juror questionnaires and on *voir dire*.  On the pre-*voir dire* jury questionnaire, for example, neither Juror Y.C. nor Juror E.S. responded affirmatively to the following question: "If you and/or a close family member or friend has ever been a party to a lawsuit (i.e., sued someone or been sued by someone) please describe the circumstances."  So, to show why these answers were dishonest, First Transit provided the District Court with court documents demonstrating that "Juror YC had been sued three times by banks to recover debts, twice in foreclosure, and once by the State of Florida" and that "Juror ES was involved in one foreclosure, one action by a condominium association to recover unpaid assessments, three cases involving debt collection, and a personal bankruptcy."  These documents were *prima facie* evidence "that a specific, nonspeculative impropriety" occurred, and thus an evidentiary hearing to investigate the jurors' responses was required.

But the District Court declined to hold an evidentiary hearing on the issue; it simply concluded as a matter of law, based merely on the fact of the false statements themselves and the lawyers' representations about their import, that in no case could the jurors' misrepresentations suggest a lack of impartiality.  By failing to hold an evidentiary hearing on Jurors Y.C.'s and E.S.'s alleged

16

misconduct before ruling on the new trial motion, the District Court abused its discretion.

To understand why we reach this conclusion, it is necessary to examine the specific missteps the District Court made. First, consider the issue of the jurors' "dishonesty," the first *McDonough* prong. On this prong, the District Court began its analysis with Y.C.'s and E.S.'s answers to the jury questionnaire. Question 10 of the jury questionnaire stated: "If you and/or a close family member or friend has ever been a party to a lawsuit (i.e., sued someone or been sued by someone) please describe the circumstances." The Torreses argued that this question was ambiguous because "a party to a lawsuit" was defined as having "sued someone or been sued by someone"—in other words, the question could be read to encompass litigation involving only individuals, not corporations. Since the lawsuits in which Y.C. and E.S. were involved were initiated by corporations or government entities, not individuals, the Torreses claimed that the jurors may have believed that they had not been sued by "someone," but rather "something."

The District Court found that the record evidence "certainly support[ed] the Plaintiffs' argument," and thus it would have been reasonable to infer that Y.C.'s and E.S.'s answers were honest. Nevertheless, the District Court simply "assume[d] that the Jurors' answers on the juror questionnaire were dishonest" for the purposes of its analysis. This assumption was unnecessary and could have

17

been entirely avoided—and any ambiguities could have been resolved—by holding an evidentiary hearing in which the *jurors themselves* explained what they believed the question meant.

Perplexingly, immediately after assuming that Y.C.'s and E.S.'s answers to the juror questionnaire were dishonest, the District Court declined to infer that Y.C.'s and E.S.'s answers to the questions posed on *voir dire* were dishonest. Instead, the Court summarily concluded that involvement "in prior litigation does not necessarily shape one's view about the legal system," and even if it did, "it certainly does not necessarily follow that the juror believes that it has *affected* his or her ability to serve as a fair and impartial juror." But the fact that Jurors Y.C.'s and E.S.'s views were "not necessarily" shaped by prior litigation, or that Y.C. and E.S. were "not necessarily" rendered partial, nevertheless leaves open the possibility that their views were shaped by prior litigation and that they were rendered partial. Again, it is precisely these uncertainties that an evidentiary hearing would resolve.

Second, consider the District Court's approach to the jurors' "actual bias," the second *McDonough* prong. On that prong, the District Court found no "close connection" "[o]n the surface" between "this personal injury case stemming from a car accident and any of the prior cases in which Juror YC or Juror ES was a party." The Court went on to conclude that there was "no evidence that Jurors YC or ES

18

had a motive to intentionally omit" their litigation histories from the jury questionnaire. But without an evidentiary hearing to dig beneath "the surface," the District Court simply could not know the jurors' motives for failing to disclose their litigation histories, the precise nature of the jurors' prior cases, or whether the jurors' experiences in those cases left them so biased against the legal system that they were unable (or unwilling) to impartially consider the evidence at trial. Indeed, it is difficult to understand how First Transit could present *any* evidence of the jurors' motives for nondisclosure without first questioning the jurors at an evidentiary hearing.[8]

Take, for example, First Transit's argument that Y.C. and E.S.—who had been sued on numerous occasions by large financial entities, the State of Florida, and condominium complexes—were more likely to sympathize with the Torreses given the trial's "'David versus Goliath' atmosphere." The District Court considered First Transit's argument but rejected it out of hand:

> [T]he Court is not persuaded by Defendant's attempt to link the present case and the cases in Juror YC's and Juror ES's past as involving a "David versus Goliath" atmosphere, causing the jurors to be biased against corporations. The Court finds little reason to presume that an

---

[8] The District Court's decision not to probe allegations of juror misconduct is of particular importance because of the ethical restrictions governing attorney communication with jurors. While a party's counsel may communicate with a juror after a case has concluded "to determine whether the verdict may be subject to legal challenge" if counsel "has reason to believe that grounds for such challenge may exist," R. Regulating Fla. Bar 4-3.5(d)(4), counsel may only do so with "leave of Court granted for good cause shown," and the court may "limit the time, place, and circumstances under which the interviews may be conducted." S.D. Fla. L.R. 11.1(e).

individual who had been sued by a bank to recover unpaid credit card bills, for example, would be biased against an unrelated corporation such as First Transit. An individual's history of having been sued by corporations bears only a very general connection to a case in which an unrelated corporation is a defendant.

We first note that the jurors' past lawsuits did not involve only "corporations"—Juror Y.C. had been sued by the State of Florida, and Juror E.S. was subject to a federal tax lien in which the IRS was the creditor. And, in any event, rather than giving First Transit the opportunity to question Jurors Y.C. and E.S. to suss out any possible biases against large corporations or other "Goliaths," the District Court simply assumed that Y.C.'s and E.S.'s previous lawsuits could not have, under any circumstances, rendered the jurors biased against the legal system.

The District Court rationalized this assumption by noting that it questioned all of the potential jurors on *voir dire* regarding (1) whether anyone felt that they could not serve as a fair and impartial juror, (2) whether there was anyone that could not follow the law after hearing what the burden of proof was in the case, and (3) whether there was anyone that had "a belief, a feeling, or an attitude about corporation[s], either for them or against them, that might cause [the juror] to treat a corporation differently from an individual." Since neither Y.C. nor E.S responded affirmatively to any of these questions, the Court reasoned that the jurors must have been "willing and able to be fair and impartial in this case." But it belies reality to assume that Y.C. and E.S. *must* have responded to the District

20

Court's questions honestly when the Court was simultaneously confronted with evidence that, on its face, demonstrated that the jurors were dishonest on their juror questionnaires. In fact, this Court has stated that a "juror's dishonesty is a strong indication of bias," *Carpa*, 271 F.3d at 967, so Y.C.'s and E.S.'s dishonesty on the juror questionnaires militates strongly against the District Court's assumption that the jurors were unbiased.

Moreover, the District Court's view of what constitutes a "close connection" between Jurors Y.C.'s and E.S's past cases and the present case is too narrow. In finding that First Transit "failed to demonstrate bias," the District Court stated that First Transit did not present "specific facts showing such a close connection to the litigation at hand that bias must be presumed." To reinforce this conclusion, the Court pointed to factual dissimilarities between "this personal injury case stemming from a car accident and any of the prior cases in which Juror YC or Juror ES was a party." But despite these factual dissimilarities, it is entirely possible that an evidentiary hearing would have revealed that Y.C.'s and E.S.'s extensive experiences with civil litigation were sufficiently "close connections" to the *legal system* that bias against *the system itself*—in other words, that the two jurors were unable or unwilling to impartially consider the evidence at trial—could be "presumed." *Id.*

We therefore conclude that the District Court's failure to conduct an evidentiary hearing constituted an abuse of discretion. The District Court needed to take some action to "establish a sufficient evidentiary record either to determine whether [the jurors were] honest and unprejudiced or to allow us to review the determination," but it did not. *Carpa*, 271 F.3d at 967. There is no way, based on the bare record before us, that we could conduct a meaningful review of whether the Court's conclusions were correct. Accordingly, we vacate the District Court's order denying First Transit's motion for a new trial and remand with instructions to conduct an evidentiary hearing to determine whether the jurors made dishonest statements during *voir dire* where a truthful response "would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556, 104 S. Ct. at 850.

We expect that the evidentiary hearing will address all facts relevant to whether Jurors Y.C. and E.S. could have impartially considered the evidence presented at trial and applied the law in accordance with the District Court's instructions. The District Court will need to determine (1) whether the jurors' responses were dishonest as alleged, including both (a) their responses to the questionnaire and (b) their silence in response to certain questions on *voir dire*; and if so, (2) whether an honest response to the aforementioned questions would have provided a basis to disqualify that juror from service, or whether the dishonest response bears such a "close connection to the circumstances at hand" that the

22

juror's eligibility for disqualification must be presumed.  *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984) (internal quotations omitted).  We emphasize that "[a] juror's dishonesty is a strong indication of bias," which would be disqualifying, *Carpa*, 271 F.3d at 967, and that it is important to consider "the specific information . . . concealed" in determining whether disqualification would have been warranted, *Perkins*, 748 F.2d at 1532.  And we note that bias can be inferred in "situations in which the circumstances point so sharply to bias in a particular juror that even his own denials must be discounted in ruling on a challenge for cause."  *Perkins*, 748 F.2d at 1532 n.14 (quoting *United States v. Nell*, 526 F.2d 1223, 1229 n.8 (5th Cir. 1976)).

The evidentiary hearing should include in-depth questioning of both Juror Y.C. and Juror E.S. about the prior litigation in which each was involved.  At a minimum, the questioning should cover the facts of those prior cases; the identities of the lawyers, parties, and judges; the jurors' perceptions of the prior cases and of the legal system as a whole; and the outcomes of the prior cases—that is, whether the jurors prevailed or lost.  The Court will need to determine whether the jurors harbor any biases—including those against the legal system itself—that would cast doubt on their fundamental ability to properly weigh the evidence and would ultimately render them partial.  We expect that the result of the District Court's hearing on remand will be a full elucidation of these factual issues.

23

When the evidentiary hearing has concluded, the District Court shall determine whether a new trial is warranted on the ground that either of the two jurors was challengeable for cause.

IV.

For the foregoing reasons, we vacate the District Court's order denying First Transit's motion for a new trial and remand this matter with instructions that the District Court conduct an evidentiary hearing in conformance with this opinion.

**VACATED AND REMANDED WITH INSTRUCTIONS.**

## U. S. DISTRICT JUDGE BETH BLOOM
### Juror Questionnaire in Civil Cases

Please answer fully all of the following questions:

1.  What are your name and date of birth?  _____;
    _____

2.  Please describe your current employment, and past work history.
    _____
    \_\_\_
    _____

3.  What is your educational background (i.e., grade school, high school, college, etc.).
    _____

4.  Please describe your spouse or partner's current and past occupation and describe his/her educational background.
    _____
    \_\_\_
    _____

5.  If you have any adult children, describe their level of schooling and/or employment.
    _____

6.  Have you served in the military?  If so, please describe such service.
    _____

7.  Have you ever served on a jury before?  If so, state how many times; the type of case; whether the trial was in state or federal court; if you reached a verdict and if you were the foreperson.
    _____
    _____

8.  Would you briefly describe any personal hobbies and/or interests you have?
    _____

9.  What newspapers and/or magazines do you read regularly?  Also, what are your favorite T.V. shows and/or websites?
    _____

10. If you and/or a close family member or friend has ever been a party to a lawsuit (i.e., sued someone or been sued by someone) please describe the circumstances.
    _____
    \_

11. Do you participate in any organizations or groups (community, social, civil, union, religious, political)?  _____  If yes, please state the name of the group and if you hold a leadership position.

_____

_____ ___

12. Is there anything in your background or personal feelings which might affect your ability to be fair and impartial to both sides?

_____

___

_____

___

_____

___