[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13693

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DONATUS O. MBANEFO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:16-cr-00002-HL-TQL-6

_____

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Almost three years after a jury convicted physician Donatus Mbanefo for abusing his ability to prescribe controlled substances, he filed a motion for new trial. The district court denied the motion, holding that his claims of error lacked merit and were not based on newly discovered evidence. After careful review, we affirm.

## I.

Donatus Mbanefo was convicted by a jury of conspiracy to unlawfully dispense Schedule II, III, and IV controlled substances and unlawful dispensation of controlled substances. 21 U.S.C. §§ 846; 841(a)(1), (b)(1)(C), (b)(1)(E), (b)(2). Mbanefo had worked as a physician at the Relief Institute of Columbus. But that pain management clinic, as revealed at Mbanefo's trial, was merely a façade for a pill mill, handing out prescriptions without legitimate medical purpose. The Drug Enforcement Administration caught on to the clinic because pharmacies and former physicians reported the suspicious prescriptions and practices.

The DEA investigation revealed that patients would often travel in groups from all over the country to be seen at the clinic, receive large opioid prescriptions in exchange for cash payments, and then travel to pharmacies in other states to fill the prescriptions. The clinic would often schedule large numbers of patients and stay open late into the night to accommodate all of

them.  Expert physician witnesses, reviewing records of patient visits, testified at trial that Mbanefo failed to properly check patients' prescription histories, failed to perform sufficient physical examinations or testing, and prescribed aberrant quantities of opioids.

The government also introduced at trial evidence extracted from over 75 boxes of patient files the DEA seized when it closed the clinic.  A DEA agent testified how a team of analysts uploaded the medical and prescription data from the patient files into an Excel spreadsheet.  In Excel, the government used the "pivot table" tool to make summary charts displaying the types and quantities of prescriptions Mbanefo wrote—most of which were for Schedule II drugs like oxycodone.  Mbanefo through counsel objected to these summary charts, arguing that they were not admissible because the patient files had been neither "admitted nor presented to the jury." The district court asked whether the government had shared the 75 boxes of patient files and the Excel spreadsheet with him, and he conceded that the government had, so the district court admitted the summary charts.

Based on this and other evidence, the jury found Mbanefo guilty, and the district court sentenced him to 96 months' imprisonment.  On direct appeal, Mbanefo argued that the evidence was insufficient to sustain his conviction, that the district court gave an improper jury instruction, and that the court's drug-quantity finding at sentencing was clearly erroneous.  *United States*

*v. Bacon*, 809 F. App'x 757, 759–61 (11th Cir. 2020) (unpublished). This Court affirmed his conviction and sentence. *Id.* at 761.

Mbanefo launched a collateral attack a few months later, filing a 28 U.S.C. § 2255 motion where he raised several claims of ineffective assistance of counsel. The district court denied the motion, then this Court granted a certificate of appealability as to two claims. We do not address here the claims raised in that separate appeal of the § 2255 motion.

While his § 2255 motion was still pending before the district court, Mbanefo also filed a motion for new trial. The district court denied that new-trial motion, and Mbanefo now appeals.[1]

## II.

"We review a district court's denial of a motion for new trial for abuse of discretion." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc).

## III.

"Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution. Indeed, the defendant bears the burden of justifying a new trial." *Id.* (quotation omitted). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict

---

[1] Mbanefo asks this Court for leave to file an amended reply brief because the original exceeded the word limit. That motion is **GRANTED**.

or finding of guilty." Fed. R. Crim. P. 33(b)(2). Mbanefo filed his new-trial motion nearly three years after trial and thus must base his motion on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). To do so, he must establish that: (1) the evidence was discovered after trial, (2) is material, and (3) is not merely cumulative or impeaching. *United States v. Caldwell*, 963 F.3d 1067, 1078–79 (11th Cir. 2020). He must also show that (4) his failure to discover the evidence was not due to lack of diligence and (5) the evidence is of such a nature that a new trial would probably produce a different result. *Id.*

Mbanefo makes three main arguments: a juror misconduct claim; a suppression claim under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972); and a selective prosecution claim. Because the claims are not premised on newly discovered evidence and he forfeited the selective prosecution claim, none of them justify a new trial.

According to Mbanefo, five months after trial he learned that his trial counsel knew a juror "personally"—several years earlier, counsel had brought a successful 42 U.S.C. § 1983 case against the juror's "brother who was a Georgia State Trooper." Mbanefo argued that "with this background knowledge" his counsel was wrong to allow her "to be empaneled" on the jury and that the juror was biased against him because she hid the fact that "she was related to a law enforcement officer" and "was familiar with the trial counsel."

6                    Opinion of the Court                    21-13693

But as Mbanefo admits, these facts were not discovered after trial. In fact, he protests that his attorney recognized her at trial and chose not to strike her from the jury. Mbanefo claims only that his attorney did not share the information with him until after the trial. And that lack of communication does not amount to newly discovered evidence. A "defendant is 'deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.'" *New York v. Hill*, 528 U.S. 110, 115 (2000) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962)). Because Mbanefo through his counsel was fully aware of any juror misconduct before trial, it is not newly discovered evidence.[2]

And the claim would have failed on the merits regardless. A dishonest juror response to "a material question on *voir dire*" warrants a new trial only when the defendant also presents proof of "actual bias," either "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001). Mbanefo has not even shown that the juror recognized his trial counsel's connection to the prior § 1983 action, let alone any actual bias. And the fact that her brother worked in law enforcement is not so related to Mbanefo's unlawful

---

[2] Mbanefo also raises an "actual innocence" claim, restyled before this Court as an "insufficient evidence" claim, but it fails for the same reason—it is not based on newly discovered evidence.

prescribing that we must presume bias exists. The district court thus did not abuse its discretion when it denied the motion for new trial based on juror misconduct.

Mbanefo also argues that the government unlawfully suppressed *Brady* evidence because it did not share the "Pivot Table" that summarized the clinic physicians' prescribing data. He claims that the table would have proved that Mbanefo was not "one of the top 2 prescribers at the time [he] was charged in the original indictment" and that he was not "one of the top 3 prescribers at the time the superseding indictment was returned." To make out a *Brady* claim, a defendant must show that (1) the government withheld evidence favorable to the defendant; (2) the defendant did not possess and could not obtain that evidence with any reasonable diligence; and (3) had the government disclosed the evidence, there is a reasonable probability that the outcome would have been different. *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).

Mbanefo relatedly claims that the failure to produce the table resulted in *Giglio* error. He says it would have revealed that the prosecutor made false statements that Mbanefo was one of the clinic's "top three prescribers." To establish *Giglio* error, a defendant must (1) "identify evidence the government withheld" that would have revealed that the statements were false, (2) establish that the government "knowingly used perjured testimony" or failed to correct what it "subsequently learned was false testimony," and (3) show that "such use was material" to the

judgment. *United States v. Stein*, 846 F.3d 1135, 1147 (11th Cir. 2017) (quotation omitted).

Both claims fail for the same reason: the government did not withhold the evidence, despite what Mbanefo says to the contrary. As the government's witness explained, a "pivot table" is "a tool" built into Excel "that helps you summarize or visualize" data in a spreadsheet. And no one disputes that the government provided both the 75 boxes of patient data and the Excel spreadsheet compiling that patient data to Mbanefo. Because that spreadsheet contained all the data Mbanefo wanted from the "Pivot Table"— including the prescribing records for the other physicians at the clinic—his *Brady* claim and his *Giglio* claim fail. Mbanefo cannot complain because, with reasonable diligence, he could have analyzed the spreadsheet data himself. *See United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003).

Mbanefo finally argues for a new trial on selective prosecution grounds, claiming that he "was prosecuted because of his age and race." But "a claim of selective prosecution is not the proper subject of a Rule 33(b)(1) motion for a new trial" because it "has no bearing on the integrity of the trial or the verdict." *United States v. Scrushy*, 721 F.3d 1288, 1305 (11th Cir. 2013).

Besides that, Mbanefo forfeited the claim by failing to raise it before trial. The defense of selective prosecution "must be raised by pretrial motion if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3)(A)(iv). If a defendant fails to do so, "the motion is untimely" and may not be considered unless

he can show "good cause" for the delay.  Fed. R. Crim. P. 12(c)(3). Mbanefo argues that the government withheld necessary information about whether other doctors worked at the clinic for a similar period or produced similar quantities of unlawful prescriptions.  But as we explained above as to his *Brady* and *Giglio* claims, Mbanefo had access to these facts before trial.  He thus cannot show good cause for failing to raise a timely selective prosecution defense.  *See Scrushy*, 721 F.3d at 1306.[3]

⋆    ⋆    ⋆

Because Mbanefo seeks a new trial without producing newly discovered evidence to support his request, the court properly exercised its discretion to deny the motion.  The district court's order is **AFFIRMED.**

---

[3] Along with the motion for new trial, Mbanefo also filed a motion for both discovery and dismissal of the indictment, which focused largely on his selective prosecution claim.  Because the selective prosecution claim was forfeited and the other underlying claims lack merit, we also affirm the denial of that motion.